UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
INTREPID POTASH-NEW             )
MEXICO, LLC,                    )
                                )
     Plaintiff,                 )
                                )
     v.                         )        Civil Action No. 08-2218 (RWR)
                                )
UNITED STATES DEPARTMENT OF     )
THE INTERIOR, et al.,           )
                                )
     Defendants.                )
_____)
```

MEMORANDUM OPINION AND ORDER

Intrepid Potash-New Mexico, LLC brings claims under the
Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.,
against the United States Department of Interior ("DOI"), the DOI
Secretary in his official capacity,[1] and the United States Bureau
of Land Management ("BLM"), asserting that the decision by the
Interior Board of Land Appeals ("IBLA") to approve permits to
drill oil and gas wells on protected federal land violates
federal law.  Yates Petroleum Corp. intervened as a defendant and
now moves to transfer venue.  Because Yates is not barred from
moving for a transfer under 28 U.S.C. § 1404(a) and has shown
that transferring venue to the District of New Mexico is in the
interest of justice, Yates' motion to transfer will be granted.

---

[1] Ken Salazar is substituted for Dirk Kempthorne under Fed.
R. Civ. P. 25(d).

-2-

BACKGROUND

Potash is an essential ingredient in agricultural fertilizer, and the federal government set aside land in New Mexico to protect and conserve potash deposits.  (Compl. ¶¶ 2-3.) Intrepid "explores for, mines, and mills potash ore within the approximately 497,000-acre Potash Area" in New Mexico.  (Id. ¶ 7.)  Oil and gas resources underlie the potash deposit and drilling for these energy resources can contaminate potash deposits.  (Id. ¶¶ 13-14.)  In 1986, the DOI issued an order that set forth "how the federal government will administer the development of the potash and oil and gas resources on federal lands in the Potash Area and resolve conflicts between oil and gas production and potash mining."  (Id. ¶ 23.)

Yates filed applications for permits to drill oil and gas wells located within the New Mexico potash area.  (Id. ¶ 50.) The BLM field office in Carlsbad, New Mexico approved the applications for permits to drill, finding that the proposed drilling would have minimal environmental impacts.  (Id. ¶ 59.) The state director for the New Mexico BLM office signed approvals for the applications for permits to drill and declined Intrepid's request to reconsider or stay the decision.  (Id. ¶¶ 60, 64.) Intrepid appealed the state director's approval of Yates' applications to the IBLA, which is located in Virginia, but the IBLA affirmed the state director's decision.  (Id. ¶¶ 65, 69;

-3-

Ex. A at 1.)  Intrepid, a New Mexico corporation, has principal offices in Colorado.  (Yates' Reply to Pl.'s Opp'n ("Yates' Reply"), Ex. 1 at 1.)  The federal defendants are located in the District of Columbia, and Yates is headquartered in New Mexico. (Yates' Mem. in Supp. of Mot. to Transfer Venue ("Yates' Mem.") at 7.)

Intrepid brings APA claims arguing that the IBLA decision violates the 1986 order, the National Environmental Policy Act ("NEPA"), and the Federal Land Policy and Management Act. (Compl. ¶¶ 70, 104-15, 119.)  Yates intervened as a defendant and moves to transfer the action to the District of New Mexico under 28 U.S.C. § 1404(a).  (Yates' Mem. at 2.)  Intrepid contends that an intervenor-defendant waives all challenges to venue and that even if Yates' motion is considered, a transfer is unwarranted in this case.  (Pl.'s Mem. of P. & A. in Opp'n to Yates' Mot. to Transfer Venue ("Pl.'s Opp'n") at 2-3.)  The federal defendants assert that venue here is "appropriate and lawful[,]" but they did not file any opposition to Yates' motion.  (Mar. 26, 2009 Joint Report for Scheduling Conference at 2.)

<u>DISCUSSION</u>

I.   YATES' CHALLENGE TO VENUE

Intrepid argues that Yates cannot object to venue because Yates intervened and "acknowledge[d] that venue is proper in this District[.]"  (Pl.'s Opp'n at 5.)  A challenge to improper venue

-4-

is made under 28 U.S.C. § 1406, which states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Courts have noted that an intervenor-defendant cannot assert that venue is improper and move for a transfer of venue under § 1406 because such a defendant voluntarily participated in the case and assumed the risk that a court could order relief or enter a judgment against it.  <u>Pharm. Research & Mfrs. of Am. v. Thompson</u>, 259 F. Supp. 2d 39, 59 (D.D.C. 2003); <u>see also</u> <u>Trans World Airlines, Inc. v. C.A.B.</u>, 339 F.2d 56, 63-64 (2d Cir. 1964) (finding that "[v]enue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue").

However, Yates does not contest venue as improper, but seeks a transfer based on "the convenience of parties and witnesses, in the interest of justice" under 28 U.S.C. § 1404(a).  Section 1404(a) gives "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

-5-

While some courts have prevented an intervening defendant from moving for transfer under § 1404(a), see Beam Laser Sys., Inc. v. Cox Commc'ns, Inc., 117 F. Supp. 2d 515, 517-18 (E.D. Va. 2000); Commonwealth Edison Co. v. Train, 71 F.R.D. 391, 394 (N.D. Ill. 1976), the court in Western Watersheds Project v. Clarke, Civil Action No. 03-1985 (HHK), slip op. at *4-7 (D.D.C. July 28, 2004), found that the rationale for preventing an intervening defendant from challenging venue as improper and seeking a transfer under § 1406 was inapplicable to a motion for transfer under § 1404(a).  Sections 1404(a) and 1406 have different purposes.  Section 1406 "'operates when there is an obstacle -- either incorrect venue, absence of personal jurisdiction, or both -- to a prompt adjudication on the merits in the forum where originally brought.'"  Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir. 1983) (quoting Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967)).  A challenge to improper venue must be raised in a responsive pleading or before that pleading is filed.  Fed. R. Civ. P. 12(b).  An intervenor-defendant's motion to transfer for improper venue under § 1406 "would occur after a plaintiff had the right to expect no further objections to venue" and would create the risk that defendants "may abuse the rule by seeking out intervenors to dismiss the cases against them."  Western Watersheds, slip. op. at *6.  By comparison, "the purpose of [§ 1404(a)] is to prevent the waste of time, energy and money

-6-

and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations marks omitted). For a § 1404(a) motion, "'there is no claim that venue is improper as to the original [parties]. Neither is a request to transfer [under § 1404(a)] waived by the [d]efendant if not raised prior to or in a responsive pleading.'" Western Watersheds, slip op. at *6 n.9 (first alteration in original) (quoting Daily Express, Inc. v. N. Neck Transfer Corp., 483 F. Supp. 916, 918 (M.D. Pa. 1979)). Western Watersheds rejected a "categorical rule barring discretionary transfer motions by intervenors, largely because no coherent rationale distinguishes an 'original' defendant from a third-party defendant-intervenor for analysis under § 1404(a)." Id. at *4; see also Blackman v. District of Columbia, 277 F. Supp. 2d 89, 90 (D.D.C. 2003) (stating that generally "'[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party'" (quoting Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985))).

        Intrepid relies upon dictum in a footnote in Consumers Union of U.S., Inc. v. Consumer Product Safety Comm'n, 590 F.2d 1209 (D.C. Cir. 1978), to support its argument that an intervenor cannot move to change venue. The footnote stated that "an intervenor generally is held to have waived his privilege to

change the venue of a suit[,]" id. at 1222 n.65, and traced the principle back to Trans World Airlines, Inc.  That case, however, discussed an intervenor challenging venue as improper, not merely seeking to change venue for convenience.  339 F.2d at 63-64. Neither Consumers Union of U.S., Inc. nor Trans World Airlines, Inc. directly addressed whether an intervenor-defendant can move to transfer venue under § 1404(a).

Intrepid also asserts that Yates has waived its right to move for a transfer of venue.  Generally, however, "[a] party who has waived [its] objection to the propriety of venue by failing to assert that defense at the proper time is not for that reason precluded from moving for a change of venue."  15 C. Wright et al., Federal Practice & Procedure: Jurisdiction § 3844 at 30-32 (3d ed. 2007) ("Wright").  Even if Yates can no longer argue that venue here is improper, Yates is not necessarily precluded from seeking a transfer of venue under § 1404(a).  See Great Socialist People's Libyan Arab Jamahiriya v. Miski, 496 F. Supp. 2d 137, 141 n.3 (D.D.C. 2007) (noting that "a motion to transfer may be made at any time after the initiation of an action under section 1404(a)" (emphasis added)).  Accordingly, Yates' motion to transfer will be considered.

II.  VENUE

In a motion to transfer a case under § 1404(a), the moving party has the burden of establishing that a transfer is proper,

-8-

Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006), "and the motion must not be lightly granted."  15 Wright § 3848 at 163.  As a threshold requirement, the transferee court must be in a district where the action "might have been brought." 28 U.S.C. § 1404(a).  If it is, then a court considering the transfer motion has broad discretion to balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses.  Stewart Org., Inc., 487 U.S. at 29-30; Demery v. Montgomery County, MD, 602 F. Supp. 2d 206, 210 (D.D.C. 2009).  If the balance of private and public interests favors a transfer of venue, then a court may order a transfer.

> A.   Venue in the District of New Mexico

Under 28 U.S.C. § 1391,

> [a] civil action in which a defendant is an officer or
> employee of the United States or any agency thereof
> acting in his official capacity or under color of legal
> authority, or an agency of the United States, or the
> United States, may, except as otherwise provided by
> law, be brought in any judicial district in which (1) a
> defendant in the action resides, (2) a substantial part
> of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) the plaintiff
> resides if no real property is involved in the action.

28 U.S.C. § 1391(e).  The District of New Mexico satisfies this venue statute since Intrepid is challenging the IBLA's affirmance of the BLM New Mexico director's decision to approve applications by a defendant corporation headquartered in New Mexico for

-9-

permits to drill on land that is located in New Mexico.  To qualify as a district where the case might have been brought, though, the federal district court in New Mexico must also have personal jurisdiction over the defendants.  See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).

A federal district court can exercise personal jurisdiction over a defendant on whom process is properly served either when that defendant would be subject to the jurisdiction of a court of general jurisdiction in that state, Fed. R. Civ. P. 4(k)(1)(A); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999), or when jurisdiction is authorized by federal statute.  Fed. R. Civ. P. 4(k)(1)(C).  In either case, the exercise of personal jurisdiction must stem from sufficient minimum contacts by the defendant with the forum to comport with due process.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (noting that the "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State[,] International Shoe Co. v. Washington, . . . 326 U.S. [310,] 316 [(1945),] . . . 'such that he should reasonably anticipate being haled into court there'" (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Yates is a New Mexico corporation that owns thousands of acres of federal oil and gas leases in the Potash Area in New

-10-

Mexico.  (<u>See</u> Mem. in Supp. of Yates Petroleum Corp. Mot. to Intervene at 5.)  Yates' contacts with New Mexico would amply satisfy constitutional requirements for the exercise of personal jurisdiction over Yates there.  In addition, in a New Mexico court of general jurisdiction, "[j]urisdiction of the person of defendant is acquired by the service of process[.]"  <u>Bourgeious v. Santa Fe Trail Stages</u>, 95 P.2d 204, 206 (N.M. 1939) (internal quotation marks and citation omitted).  Thus, the United States District Court for the District of New Mexico would have personal jurisdiction over Yates under New Mexico law because Yates is subject to service of process in the state as a domestic corporation.  <u>See</u> NMRA, Rule 1-004(G)(1)(a).[2]

With regard to the remaining defendants, a court also may also assert personal jurisdiction over a defendant served under a federal statute authorizing nationwide service of process.  <u>See Flynn v. Ohio Building Restoration, Inc.</u>, 260 F. Supp. 2d 156, 170 (D.D.C. 2003) ("'Where Congress has authorized nationwide service of process, a federal court may exercise personal jurisdiction over any United States resident[.]'") (citations omitted); Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons . . .

---

[2] That rule provides, in relevant part, that service may be made upon "a domestic or foreign corporation . . . by serving a copy of the process to an officer, a managing or a general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process."  NMRA, Rule 1-004(G)(1)(a).

-11-

establishes personal jurisdiction over a defendant[] . . . when
authorized by a federal statute."). Courts are divided over
whether such a defendant must have sufficient minimum contacts
only with the United States generally or with the forum
specifically for the exercise of personal jurisdiction to comport
with due process. Compare, e.g., Bellaire General Hosp. v. Blue
Cross Blue Shield of Mich., 97 F.3d 822, 825 (5th Cir. 1996)
(concluding that when determining whether exercising personal
jurisdiction over a defendant served under a federal nationwide
service of process statute comports with due process, "the
relevant inquiry is whether the defendant has had minimum
contacts with the United States") (internal quotation marks
omitted) with Peay v. BellSouth Med. Assistance Plan, 205 F.3d
1206, 1211-12 (10th Cir. 2000) (requiring sufficient contacts
with forum state for exercise of personal jurisdiction over
defendant served under federal nationwide service of process
statute to comport with due process). The remaining defendants
here -- two federal government agencies and a federal government
official sued in his official capacity -- are subject to
nationwide service of process. See 28 U.S.C. § 1391(e) (service
of process upon a defendant that is an officer or agency of the
United States "may be made by certified mail beyond the
territorial limits of the district in which the action is
brought"). Because the suit arises out of these defendants'

-12-

management of the oil, gas, and potash deposits in New Mexico
(Pl.'s Opp'n at 1-2), they could reasonably have foreseen being
haled into court in that state.  Thus, the United States District
Court for the District of New Mexico could exercise personal
jurisdiction over these defendants under even the more exacting
due process requirements articulated in Peay.  Therefore, this
action could have been brought in the transferee district.

     B.   <u>Private interests</u>

     The private interest factors typically considered include:
1) the plaintiff's choice of forum, 2) the defendant's choice of
forum, 3) where the claim arose, 4) the convenience of the
parties, 5) the convenience of the witnesses, particularly if
important witnesses may actually be unavailable to give live
trial testimony in one of the districts, and 6) the ease of
access to sources of proof.  <u>Montgomery v. STG Int'l, Inc.</u>, 532
F. Supp. 2d 29, 32-33 (D.D.C. 2008).

     A "'plaintiff's choice of forum is ordinarily accorded
deference.'"  <u>Demery</u>, 602 F. Supp. 2d at 210 (citing <u>Aftab v.
Gonzalez</u>, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)).  "When two
potentially proper venues are involved, the plaintiff['s] choice
of forum is often accorded substantial deference, particularly
where the plaintiffs have chosen their home forum and many of the
relevant events occurred there."  <u>Id.</u>  However, if a plaintiff is
not a resident of the forum and "most of the relevant events

-13-

occurred elsewhere[,]" this deference is weakened.  <u>Hunter v.
Johanns</u>, 517 F. Supp. 2d 340, 344 (D.D.C. 2007).[3]  Transfer is
supported when "the material events that constitute the factual
predicate for the plaintiff's claims occurred" in the transferee
district.  <u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3, 6-7
(D.D.C. 1996).

Regarding the parties' forum choices and where the claim
arose, Yates asserts that "most of the relevant events, the land,
and the subject matter occurred in or have direct ties to the
District of New Mexico."  (Yates' Reply at 6-7.)  New Mexico has
a substantial connection to the controversy because the land at
issue is entirely within New Mexico, and the BLM field office in
Carlsbad and the New Mexico state director made the original
decisions to approve the drilling applications.  (Compl. ¶¶ 59-
60; Pl.'s Opp'n at 8; Yates' Reply at 5.)  <u>See also</u> <u>Southern Utah
Wilderness Alliance v. Norton</u> ("<u>SUWA I</u>"), Civil Action No. 01-
2518 (CKK), 2002 WL 32617198, at *3 (D.D.C. June 28, 2002)
(finding that Utah had a significant connection to that case

---

[3] While <u>Hunter</u> referred to "'a strong presumption against
disturbing plaintiff['s] initial forum choice[,]'" 517 F. Supp.
2d at 344 (alterations in original) (quoting <u>Pain v. United
Techs. Corp.</u>, 637 F.2d 775, 784 (D.C. Cir. 1980)), that
formulation actually had greater applicability to motions to
dismiss for forum non conveniens before § 1404(a) was enacted
allowing transfers more freely than the forum non conveniens
doctrine allowed dismissals.  <u>See</u> 15 Wright § 3848 at 160-61
(tracing the formulation to <u>Gulf Oil Co. v. Gilbert</u>, 330 U.S.
501, 508 (1947), a forum non conveniens case).

-14-

because the land was located in Utah, any decision would most
directly affect Utah residents, and the sale and issuance of the
oil and gas leases was approved by the Utah BLM without any
assistance from the Washington, D.C. BLM office).  Intrepid does
not contend that the District of Columbia is its home forum, but
instead asserts that this case has a close nexus to the District
of Columbia because potash reserves are a national issue, "a
national panel of administrative judges, speaking for the
Secretary residing in Washington, D.C., issued the agency
decision here under review[,]" and "each of Intrepid's three
claims for relief focuses on interpretation of federal statutes,
regulations, or orders."  (Pl.'s Opp'n at 7-9.)

    Naming a cabinet secretary or a federal agency does not
alone anchor venue here.  "Courts in this circuit must examine
challenges to . . . venue carefully to guard against the danger
that a plaintiff might manufacture venue in the District of
Columbia [because by] naming high government officials as
defendants, a plaintiff could bring a suit here that properly
should be pursued elsewhere."  Cameron v. Thornburgh, 983 F.2d
253, 256 (D.C. Cir. 1993).  In Stockbridge-Munsee Cmty. v. United
States, 593 F. Supp. 2d 44 (D.D.C. 2009), the court gave less
deference to the plaintiff's choice of forum because "[m]ere
involvement . . . on the part of federal agencies, or some
federal officials who are located in Washington, D.C. is not

determinative" and "[t]hough the administrative action at issue
in [the] case arose in Washington, the only real connection [the]
lawsuit [had] to the District of Columbia [was] that a federal
agency headquartered here . . . is charged with generally
regulating and overseeing the [administrative] process." Id. at
47 (internal citation and quotation marks omitted).

Courts have deferred to a plaintiff's choice of this forum
in cases involving a national issue when federal officials in the
District of Columbia had significant involvement in the agency
action.  For example, Wilderness Society v. Babbitt, 104 F. Supp.
2d 10 (D.D.C. 2000), noted that the national petroleum reserve in
Alaska "has consistently been treated as a national resource
despite the special interest of the Alaskan people" and that
Congress had expressed through statute that the reserve was to be
"regulated in a manner consistent with the total energy needs of
the Nation." Id. at 13.  The national interest in the petroleum
reserve in Alaska was reflected by the public meetings held in
San Francisco and Washington, D.C., the 7,000 comments received
by the agency from all fifty states, and the involvement of
national conservation organizations as plaintiffs. Id. at 14.
The District of Columbia's connection was also strengthened
because six plaintiffs had offices in Washington, D.C. and
Secretary Babbitt was personally and substantially involved in
the matter by visiting the area at issue, meeting with interested

parties, signing the record of decision, and briefing the public about his decision. Id.; see also Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001) (noting that venue was supported because the plaintiff alleged that officials in Washington, D.C. were "involved in inter-agency discussions regarding the reissuance of the HBA grazing permit").

By contrast, Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C. 2003), concluded that the first factor weighed in favor of transfer because the federal officials in Washington, D.C. did not play any active role in the decision and the national significance of the Everglades ecosystem by itself was insufficient to warrant deference to plaintiff's forum choice. Id. at 67-68; see also SUWA I, 2002 WL 32617198, at *3 (rejecting plaintiffs' claim that the case involved a national interest because "[p]laintiffs [had] not pointed to significant action taken in Washington, D.C. such as the public hearing held in Wilderness Soc'y and [had] not demonstrated the type of substantial personalized involvement by a member of the Washington, D.C. BLM that supports a finding of 'meaningful ties' to this District"). Moreover, even when a federal agency has had some role in formulating the policy that was applied by a local agency office, this does not alone support venue when the claims are centered on the decision of a local agency office. In Southern Utah Wilderness Alliance v. Norton ("SUWA II"), 315 F.

Supp. 2d 82, 87 (D.D.C. 2004), BLM headquarters officials changed
the agency's policy concerning leasing lands and had some contact
with the state office regarding the new policy.  The court,
though, found these ties to be insufficient to support venue in
Washington, D.C. because the claims did not involve the changes
to agency policy, and the actual lease decisions were made by the
Utah BLM office without any involvement by the Washington D.C.
office.  Cf. Akiachak Native Cmty. v. Dep't of Interior, 502 F.
Supp. 2d 64, 67-68 (D.D.C. 2007) (stating that the plaintiff's
choice of venue was given deference because the plaintiff
challenged the validity of a regulation that was formulated
through a rule-making process which occurred in the District of
Columbia).

Intrepid's claims are focused on the errors of the IBLA's
decision to affirm the state director's approval of Yates'
permits.  (See Compl. ¶¶ 123-52.)  Intrepid does mention past
actions by the Secretary in issuing the 1986 Order in its
complaint.  (Compl. ¶ 23.)  However, unlike the Wilderness
Society plaintiffs, Intrepid does not allege that the Secretary,
Department of Interior, or BLM in Washington, D.C. played a role
in the decision to approve Yates' drilling applications.  (See
Pl.'s Opp'n at 8 (stating that "BLM officials in New Mexico did
issue the initial decisions approving the Caper wells"); Compl.,
Ex. A at 3 (stating that the "State Director's decision was based

-18-

on an environmental assessment (EA) . . . prepared pursuant to
section 102(2)(C) of [NEPA] . . . and 11 separate Decision
Records/Findings of No Significant Impact (DR/FONSI) issued by
the Field Manager, Carlsbad Field Office").)   No events are
alleged to have occurred in the District of Columbia.   The IBLA
may have acted on behalf of the Secretary when it affirmed the
state director's decision (Compl. ¶ 69), but Intrepid concedes
that the IBLA made its decision in Virginia, not this district.
(Pl.'s Opp'n at 8.)

Moreover, the involvement of federal law also does not alone
create venue.   Intrepid relies on Otay Mesa Property L.P. v. U.S.
Dep't of Interior, 584 F. Supp. 2d 122 (D.D.C. 2008), which found
that the involvement of federal environmental law was a factor in
favor of venue in the District of Columbia when evaluating the
case's local interest, but still gave diminished deference to the
plaintiff's choice of forum because "the connection between the
facts of the controversy and the District of Columbia [was]
attenuated."   Id. at 125.   Likewise, in National Wildlife Fed'n
v. Harvey, 437 F. Supp. 2d 42 (D.D.C. 2006), the plaintiff
attempted "to link the case to the District of Columbia based on
the fact that the case invokes federal statutes that establish
national standards for endangered species," but the court found
that "[p]laintiffs' choice of forum [would] not be afforded
deference 'simply because [p]laintiffs [brought] an [Endangered

Species Act] claim involving the nationally known Everglades
ecosystem.'" Id. at 47 (quoting Flowers, 276 F. Supp. 2d at 68);
see also McGlamry v. Lappin, Civil Action 06-143 (GK), 2006 WL
1382185, at *2 (D.D.C. May 18, 2006) (stating that "'there is
certainly no reason why all cases involving the construction or
constitutionality of a federal statute should be litigated in the
District of Columbia'" (quoting Starnes v. McGuire, 512 F.2d 918,
925 n.7 (D.C. Cir. 1974) (en banc))). Bosworth, also cited by
Intrepid, found that a sufficient nexus to the District of
Columbia existed "because both of the plaintiffs' counts focus on
interpretation of federal statutes, and because federal
government officials in the District of Columbia were involved in
the decision to reissue the [Horse Butte Allotment] grazing
permit[.]" 180 F. Supp. 2d at 129 (emphasis added). Here, while
Intrepid's case involves federal law, the controversy is centered
solely on Interior's final decision to approve Yates'
applications for permits to drill on land in New Mexico. Because
the District of Columbia is not Intrepid's home forum, the land
at issue and BLM's original decision to approve the applications
for permits to drill are connected to New Mexico, the IBLA
decision was made in Virginia, and the claims do not involve any
action or event that occurred within the District of Columbia,
meaningful ties to this district are lacking, weakening any

-20-

deference due Intrepid's choice of forum, and the first three private interest factors favor transfer.

Regarding the remaining three private interest factors, Yates asserts that the District of New Mexico would be more convenient for parties and for sources of proof because Yates is headquartered in New Mexico, Intrepid is incorporated in New Mexico, Intrepid's counsel is located in Colorado, and all files and documents are in New Mexico. (Yates' Reply at 4, 8; Yates' Mem. at 7.)  Intrepid argues that Yates has not shown that Washington, D.C. is an inconvenient forum and that a copy of the administrative record is located at the IBLA's office in Virginia or in Washington, D.C.  (Pl.'s Opp'n at 3.)  The convenience to counsel "is of minor, if any, importance under § 1404(a)." Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 143 (D.D.C. 1979).  While New Mexico may be more convenient for Yates, Yates does not complain that the District of Columbia is inconvenient.  In a case involving review of an agency action, "the location of witnesses is not a significant factor," but "[t]he location of the administrative record, however, carries some weight[.]"  Flowers, 276 F. Supp. 2d at 69.  The parties agree that there would be no witnesses, but dispute the administrative record's current location.  (Pl.'s Opp'n at 3; Yates' Reply at 8.)  However, neither party asserts that the administrative record would be inaccessible if the case were to

-21-

be heard in either district.  Given the nature of Intrepid's claims, it is unlikely that a transfer would materially affect the convenience of the parties or witnesses, or the ability to obtain sources of proof.  On balance, these final three private interest factors favor neither side.

C.   Public interests

The public interest factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws; 2) the relative congestion of each court; and 3) the local interest in deciding local controversies at home. Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136, 143 (D.D.C. 2004).

Yates argues that the District of New Mexico would be more familiar with Intrepid's claims because prior cases involving the 1986 order and the potash area have been decided in the District of New Mexico, including one case that is currently pending before the United States Court of Appeals for the Tenth Circuit. (Yates' Mem. at 8-9.)  While that may be true, all federal courts are presumed to be equally familiar with the law governing federal statutory claims.  SUWA I, 2002 WL 32617198, at *4 (stating that federal courts in the District of Columbia and the District of Utah were "equally capable of determining issues of compliance with federal law under NEPA . . . and APA"). Intrepid's claims do not involve New Mexico law and Yates does

not argue that Intrepid's case is related to a currently pending case in the District of New Mexico. See Bosworth, 180 F. Supp. 2d at 129-30 (noting "a pending related action in a transferee forum could support a decision to transfer a case to that forum"). This factor is neutral.

The parties agree that neither district's caseload would likely delay a resolution of this case. (Pl.'s Opp'n at 15; Yates' Mem. at 9.) This factor, then, is neutral. However, the controversy here is more local in nature and centered on New Mexico than on the District of Columbia. Considerations affecting whether a controversy is local in nature include "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, . . . and whether there was personal involvement by a District of Columbia official." Otay Mesa Property L.P., 584 F. Supp. 2d at 126. While the challenged decision here was made by IBLA in Virginia, the original BLM decision was made in New Mexico. (Yates' Mem. at 9.) Intrepid points to no direct involvement in the permit decisions by any federal official in the District of Columbia. (See Pl.'s Opp'n at 15-17.) The agency's decision directly affects New Mexico citizens because fifty percent of royalties received by the federal government for oil and gas drilling on the land in dispute would go to New Mexico under 30 U.S.C. § 191 and the drilling would affect the

local economy.  (Yates' Mem. at 9.)  The controversy is centered
on property located in New Mexico, and land commonly has been
considered a local interest.  See, e.g., SUWA II, 315 F. Supp. 2d
at 88 (stating that "[l]and is a localized interest because its
management directly touches local citizens").  Intrepid's case
differs from Wilderness Society, which found a controversy over
oil reserves in Alaska to be national in nature, because the
Secretary had personal involvement in the decision, the decision
affected a national energy reserve, five national environmental
groups were involved in the case, legislative history of the
relevant statute reflected a view that the petroleum at issue was
a national resource, and the decision had received national media
attention.  104 F. Supp. 2d at 17.  Therefore, this factor tilts
in favor of transfer.

Accordingly, although venue may lie in the District of
Columbia, the deference given to Intrepid's choice of forum is
diminished due to the claim's attenuated connection to this
district, and the balance of the remaining public and private
interests favors a transfer to the District of New Mexico.

### CONCLUSION AND ORDER

The balance of public and private interest factors favors
transfer of this case to the District of New Mexico.
Accordingly, it is hereby

-24-

ORDERED that the Yates Petroleum Corp.'s motion [10] to
transfer venue be, and hereby is, GRANTED.  The Clerk is directed
to transfer this case to the United States District Court for the
District of New Mexico.  All pending motions are left for
decision by the transferee court.

SIGNED this 18th day of November, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge